O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FLYING HELIBALL, LLC, <br>                   Plaintiff, <br>     v. <br> ZERO ZERO ROBOTICS, INC., *et al.* <br>                   Defendants. | Case No.: 8:24-cv-01838-FWS-JDE <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SERVICE OF SUMMONS BY EMAIL WITHOUT PREJUDICE [52]** |

Before the court is Plaintiff Flying Heliball, LLC's ("Plaintiff") Motion for Service of Summons by Email ("Motion" or "Mot."). (Dkt. 52.) Defendant Zero Zero Robotics, Inc. does not oppose the Motion. (Dkt. 58.) The court found this matter appropriate for resolution without oral argument. (Dkt. 63.) Based on the state of the record, as applied to the applicable law, the Motion is **DENIED WITHOUT PREJUDICE**.

## I.   BACKGROUND

Plaintiff initiated this action on August 21, 2024, alleging a single claim of patent infringement against Defendant Zero Zero Robotics, Inc. (*See generally* Dkt. 1.) On December 6, 2024, Plaintiff filed a First Amended Complaint asserting the same claim and adding four defendants—Shenzhen Zero Zero Infinity Technology Co., Ltd. ("SZZITC"), Zero Cloud One Intelligent Technology (Hangzhou) Co., Ltd. ("ZCOIT"), Hangzhou Zero Cloud Intelligent Control Technology Co. ("HZCICT"), and Hangzhou Zero Zero Technology Co. Ltd. ("HZZTC") (collectively, "Defendants").[1] (*See generally* Dkt. 37 ("FAC").)

All four Defendants are Chinese companies that maintain their "regular and established" places of business in either Shenzhen, China (Defendant SZZITC) or Zhejiang, China (Defendants ZCOIT, HZCICT, and HZZTC). (*Id.* ¶¶ 7-10, 14-17.) Plaintiff alleges Defendants have infringed on Plaintiff's patent by making, using, or selling various flying toys in the United States. (*Id.* ¶¶ 65-72.)

On January 16, 2025, Plaintiff filed the Motion requesting that that the court authorize service by email on Defendants under Federal Rule of Civil Procedure 4(f)(3). (Mot. at 4.) Plaintiff's counsel provided a proposed email address for each defendant, which he identified by researching Defendants' websites, referencing applications and documents submitted to government entities, and contacting various

---

[1] For purposes of this Motion only, the court does not include Defendant Zero Zero Robotics, Inc. in the term "Defendants."

attorneys affiliated with Defendants. (Dkt. 52-1 ¶¶ 3-14.) Plaintiff's counsel also sent a test email to each email address on January 9, 2025, and states the test emails were "delivered successfully." (*Id.* ¶¶ 15-16.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 4(h)(2), a party may serve a foreign corporation "in any manner prescribed by Rule 4(f)." Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn, authorizes service "at a place not within any judicial district of the United States":

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

A party may request alternative service under Rule 4(f)(3) "even if other methods of service remain incomplete or unattempted." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Alternative service under Rule 4(f)(3) must be "directed by the court," permitted "by international agreement," and

consistent with "constitutional norms of due process." *Id.* at 1014-15. Service comports with "constitutional notions of due process" if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1017 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Ultimately, "[i]t is within a court's 'sound discretion' to determine whether 'the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3).'" *Future Motion, Inc. v. Doe*, 2021 WL 2384304, at *2 (N.D. Cal. June 10, 2021) (quoting *Rio Props. Inc.*, 284 F.3d at 1016).

### III. DISCUSSION

In the Motion, Plaintiff requests authorization to serve Defendants by email under Rule 4(f)(3). (Mot. at 4.) Plaintiff argues that alternative service by email is appropriate because China does not allow service by postal mail, service via China's Central Authority is impracticable given that it takes approximately two years, and the successful test emails indicate service by email will provide Defendants with adequate notice of these proceedings. (*Id.* at 6-9.)

As discussed above, Plaintiff must demonstrate that its proposed method of alternative service is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3); *see also Rio Props.*, 284 F.3d at 1015 n.4 ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)."). Both China and the United States are signatories to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, which seeks to " simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017).

The Hague Convention does not address service by email, and district courts in the Ninth Circuit are split as to whether the Hague Convention permits service by

email on foreign defendants residing in signatory countries. *Compare Cadence Design Sys., Inc. v. Fenda USA Inc.*, 734 F. Supp. 3d 960, 965 (N.D. Cal. 2024) ("[T]he Hague Service Convention does not allow service by email unless the receiving country agrees to it."), *and Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co., Ltd.*, 480 F. Supp. 3d 977, 984 (N.D. Cal. 2020) ("Service by e-mail on defendants in China is not among the 'approved methods of service' specified in the Convention.") (citation omitted), *with Amazon.com, Inc. v. Limin*, 2024 WL 3342594, at *1 (W.D. Wash. July 9, 2024) ("[A]lthough the Hague Convention is silent regarding service by email, courts in this district regularly authorize requests for service by email on foreign defendants in countries that are parties to the Convention."), *and Viral DRM LLC v. Margarita*, 2024 WL 5318835, at *2 (N.D. Cal. May 31, 2024) ("Alternative means of service, such as e-mail and website posting, are not prohibited by the Hague Service Convention where a signatory nation has not expressly objected to those means.").

The court is persuaded by the reasoning of the district courts concluding that the Hague Convention prohibits service by email absent the receiving country's affirmative consent to that method of service. To start, the text and structure of the Hague Convention suggest it enumerates the exclusive methods for serving defendants located in signatory countries. By its terms, the Hague Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, art. 1. The Supreme Court has concluded the use of the term "shall" indicates "compliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 705 (1988); *see also* Fed. R. Civ. P. 4 advisory committee's notes to 1993 amendment ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service.").

Further, the Hague Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' when it applies." *Water Splash, Inc.*, 581 U.S. at 273 (quoting *Schlunk*, 486 U.S. at 699). The Convention explicitly authorizes service: (1) "through the receiving country's central authority"; (2) "through various alternative methods" such as "consular channels, service on judicial officers, or service through postal channels" as long as the receiving country has not objected to those methods; and (3) "through methods to which the receiving country has affirmatively agreed or authorized." *Cadence Design Sys.*, 734 F. Supp. 3d at 964 (citing Hague Convention, arts. 2-11, 19).

In other words, in cases in which the Hague Convention applies, service must be effectuated by one of the methods enumerated in the Convention absent some exception. *See id.* at 965 ("[T]he signatories to the Convention have agreed to make its procedures the exclusive mechanism for service of documents abroad, so methods not authorized under the Convention are 'prohibited by international agreement.'") (quoting Fed. R. Civ. P. 4(f)(3)). "Using a method of service that is not enumerated in the Convention would be tantamount to not 'applying' the Convention, which is expressly prohibited." *Facebook, Inc.*, 480 F. Supp. 3d at 983 (alteration adopted).

Service by email does not fall within one of the Hague Convention's "approved methods of service" and China has not affirmatively agreed to this method of service. *Water Splash, Inc.*, 581 U.S. at 273. Therefore, the Hague Convention preempts service by email in China unless an exception applies. *See, e.g., AXS Grp. LLC v. Internet Referral Servs., LLC*, 2024 WL 4868662, at *3 (C.D. Cal. Oct. 10, 2024) (denying motion to serve Turkish entity by email because "authorizing service by email, which is not contemplated in the Hague Convention would be equivalent to bypassing the means of service set forth in the Convention.") (citations omitted).

Plaintiff does not argue, and the state of the record does not suggest, that an exception applies to this case. *See Stebbins v. Garcia Bar*, 2024 WL 3447507, at *4 (N.D. Cal. July 16, 2024) (listing various exceptions to the Hague Convention's

enumerated service methods where the defendant's "physical address cannot be located," "the foreign country's Central Authority fails or refuses to execute service," or "in case[s] of urgency") (citation omitted).  The court notes that Plaintiff appears to have identified Defendants' respective business addresses, (FAC ¶¶ 7-10); has not yet attempted to serve through China's Central Authority, (*see* Mot. at 7); and has provided insufficient evidence of any circumstances suggesting "urgency."  *Cf. Footprint Int'l, LLC v. Footprint Asia Ltd.*, 2024 WL , at *3 (D. Ariz. Apr. 2024) (describing circumstances giving rise to "urgency" within the meaning of the Hague Convention).

Because Plaintiff has not established that an exception applies, the court concludes the Hague Convention prohibits serving Defendants by email, and "service must be accomplished by one of the channels identified within [the] Convention." *Facebook, Inc.*, 480 F. Supp. 3d at 987.  Accordingly, the court **DENIES** the Motion.[2]  This denial is **WITHOUT PREJUDICE** should later circumstances demonstrate an applicable exception to the Hague Convention.

---

[2] Even if service by email was permitted by the Hague Convention, the court would deny the Motion because Plaintiff has failed to demonstrate that service by email is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc.*, 284 F.3d at 1017.  The court notes that other than stating the test emails were "successfully delivered," (Dkt. 52-1 ¶¶ 15-16), Plaintiff has provided insufficient "indicia demonstrating the defendants would in fact receive notice of the lawsuit if the plaintiffs served them by email," including any responses from Defendants or evidence showing these addresses are actively monitored.  *See, e.g., Amazon.com, Inc. v. KexleWaterFilters*, 2023 WL 2017002, at *4 (denying motion for alternative service by email because the "[p]laintiffs have not demonstrated that the email addresses associated with [d]efendants' Selling Accounts are still valid email addresses and that service of process via email is likely to provide [d]efendants with notice of this lawsuit").

## IV. DISPOSITION

For the reasons set forth above, the Motion is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED: February 11, 2025

_____
Hon. Fred W. Slaughter
UNITED STATES DISTRICT JUDGE